(82 South. 705)

No. 23388.

## SUCCESSION OF BILLIERO.

(June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. EXECUTORS AND ADMINISTRATORS ⬤⟿221 (6)—SUCCESSION—CLAIMS—EVIDENCE.

A claim for money loaned to purchase a tomb *held* improperly denied, though supported only by claimant's testimony and that of his wife.

2. EXECUTORS AND ADMINISTRATORS ⬤⟿221(6) —SUCCESSION—EVIDENCE—CLAIMS.

The claim for money loaned to buy a grocery store *held* properly denied, as unsupported by the evidence.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

In the matter of the Succession of Joseph Billiero. The claims of Anthony Vienna and others were denied, and their opposition to the account filed by Mrs. Frances L. Billiero, testamentary executrix, having been denied, they appeal. Reversed as to the opposition and demand of the named claimant; affirmed as to the others.

Woodville & Woodville, of New Orleans, for appellants.

Fred Adolph, of New Orleans, for appellee Mrs. Frances L. Billiero.

O'NIELL, J. Appellants contest the correctness and oppose the approval of the account filed by the testamentary executrix, who is widow and universal legatee of the deceased, Joseph Billiero. There are two separate and distinct oppositions, having no relation to one another. One is a claim of Anthony Vienna, brother-in-law of the deceased, for $400, alleged to have been loaned to the deceased on the 22d of April, 1916. The other is a demand of the three sisters, heirs at law of the deceased, that they be recognized as creditors of the succession for $750, the allegation being that their mother, who died on the 22d of April, 1916, had advanced to her son, Joseph Billiero, to enable him to buy a grocery store, $1,000, for which he had failed to collate or account to her succession.

[1] Although the claim of Anthony Vienna is supported only by his testimony and that of his wife, no doubt or reflection has been cast upon their veracity, and we think the claim should have been allowed. The facts related by them are as follows: When Joseph Billiero and Mrs. Vienna, at the bedside of their dying mother, thought of their having no family vault or tomb, and of their needing one very soon, it was agreed that, as Joseph Billiero had no one to provide for except himself and his mother, and as Mr. and Mrs. Vienna had no children, Mr. Vienna and Mr. Billiero would buy a tomb for both families. For that purpose, Mr. Vienna took the $400 to the residence of the dying woman, and he and Mr. Billiero went to the cemetery to purchase the tomb. Before leaving the residence of Mrs. Billiero, Mr. Vienna gave the $400 to his wife, and instructed her to give it to her brother to put into his safe. Mrs. Vienna gave the money to Billiero, and in presence of Mr. and Mrs. Vienna, he put the money into his safe. It appears that there was only one tomb in the cemetery for sale, of which Mr. Billiero and Mr. Vienna were not satisfied

with either the size or the price; and they returned to the Billiero home without having bought the tomb. Mrs. Billiero had died during their absence; and they then decided to send for the sexton and ask him to "split the difference" in the price he had demanded and the amount they had offered for the tomb. He came promptly and, the parties having agreed upon the price, Mr. Billiero gave the sexton his check for $100 as part payment, promising to pay the balance when the deed would be signed. On his return from the funeral, the next evening, Mr. Billiero went to the home of Mr. and Mrs. Vienna and slept there that night. In a discussion of the purchase of the tomb that evening, Mr. Billiero suggested that, as it was not as large as they wanted for the two families, he alone would buy it, and Mr. Vienna might buy the vacant lot beside it and build a tomb. The Viennas assented to the proposition, and Mr. Billiero said he would return the $400. Mr. Vienna replied that he need not hurry about that; and no demand was made for a return of the money until July, 1917, when Mrs. Vienna called her brother to the telephone and asked him for the money. He replied that he would return it in six months. He died within the six months.

The bank account of Joseph Billiero shows that he had $3,000 or more to his credit at the time of his mother's death, and was able at any time thereafter to pay a debt of $400. We do not think that that circumstance alone, however, should destroy the positive and reliable testimony of Mr. and Mrs. Vienna that the money was never returned. Mr. Vienna is a man of means, having retired from business. Mr. Billiero had lived in the Vienna home from boyhood until he was 24 years old; and it appears that the Viennas had a strong affection for him, until he married. For some reason not explained, the marriage of Mr. Billiero caused an estrangement between him and Mrs. Vienna;

and it was on the day after the marriage that she called him to the telephone and requested him to pay the $400 he owed Mr. Vienna. It was probably a feeling of resentment on his part that caused him to reply that she would have to wait six months.

The testimony offered in support of the claim of Mr. Vienna was objected to on the ground that it was not in accord with the allegation that the $400 was loaned to purchase a tomb. The difference between the allegation and the proof, however, was not material. Though the money was deposited for part payment for a tomb to be bought by Mr. Billiero for himself and Mr. Vienna jointly, when the parties afterwards abrogated the agreement and Mr. Vienna told Mr. Billiero that he need not be in a hurry to return the money, the transaction was in effect a loan, it matters not what the purpose of the loan was. Our conclusion is that the claim should be allowed.

[2] The evidence in support of the claim of the three sisters of the deceased goes no further than that their mother withdrew the $1,000 which she had left with Mr. Vienna to take care of, and said she intended to let her son have it to buy a grocery store. The son did buy the store, and prospered in the business. It appears that he had only $215 of his own when he bought the business, and it is not improbable that his mother did help him in the purchase. But she lived in his house 15 years thereafter, with no other means than the $1,000 she had withdrawn from Mr. Vienna; and we assume that, if she loaned the money to her son, he accounted to her for it, and that she spent it for her own small wants during the 15 years.

The judgment rejecting the opposition and demand of the three sisters of the deceased is affirmed. The judgment rejecting the opposition and demand of Anthony Vienna is annulled, and it is ordered, adjudged, and decreed that he be recognized as a creditor of

the succession for $400, with legal interest from judicial demand; that is, from the 13th of March, 1918. The costs of the opposition of the three sisters of the deceased are to be paid by them; the costs of the opposition of Anthony Vienna are to be paid by the succession.